**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | Case No. 24-70195 |
| ACACIA RESOURCES, LLC | § | |
| | § | Chapter 7 |
| Debtor. | § | |

**AMENDED MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF ORDER APPROVING SETTLEMENT BETWEEN THE CHAPTER 7 TRUSTEE AND THE STATE OF NEW MEXICO AND THE OIL CONSERVATION DIVISION OF THE NEW <u>MEXICO ENERGY, MINERALS AND NATURAL RESOURCES DEPARTMENT</u>**

> **This pleading requests relief that may be adverse to your interests.**
>
> **If no timely response is filed within 21 days from the date of service, the relief requested herein may be granted without a hearing being held.**
>
> **A timely filed response is necessary for a hearing to be held. Any response must be timely filed with the United States Bankruptcy Clerk, Western District of Texas, <u>903 San Jacinto Blvd, Ste. 322, Austin, TX 78701</u>. If a timely response is filed, the Court will then set a hearing on the Motion, and you will be provided with notice of the date, time, and place of the hearing. If you do not attend the hearing, the Court may decide that you do not oppose the Motion.**

COME NOW Ron Satija, the Chapter 7 Trustee for the bankruptcy estate of the above-captioned debtor (the "Trustee") and the State of New Mexico, by and through Attorney General Raúl Torrez, and the Oil Conservation Division ("OCD") of the New Mexico Energy, Minerals and Natural Resources Department (collectively, "New Mexico" or "the State," and together with the Trustee, "the Parties") and hereby file this motion to compromise under Rule 9019 of the

Federal Rules of Bankruptcy Procedure.[1] The Parties seek the Court's approval of the attached Settlement Agreement regarding the allocation of potential recoveries on estate causes of action in New Mexico State Court, related questions regarding ownership of Estate causes of action, and the State's objections to the Sale Motion. The Settlement Agreement further provides that the Trustee will seek a structured dismissal of the bankruptcy following distribution of funds recovered under the terms of the proposed Settlement Agreement. In support of the Motion, the Parties would respectfully show as follows:

## I. JURISDICTION

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and this Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 362(a) and Bankruptcy Rule 9019.

## II. BACKGROUND

3. On December 27, 2024, Acacia Operating Company, LLC and Acacia Resources, LLC (the "Debtors") each filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code and the cases are not jointly administered. On or about the same date, Ron Satija was appointed as the Chapter 7 Trustee.

4. The primary assets of the Debtors' estates include oil and gas leases, wells, and mineral rights located in New Mexico, which are regulated under State law, which requires, *inter*

---

[1] The Trustee is filing a nearly identical motion in *In re Acacia Operating, Company,, LLC*, No. 24-70194-SMR.

*alia*, the Debtors to plug inactive wells, remediate the soil, and restore the land that has allegedly been contaminated by the Debtors. Further, New Mexico asserts that under the United States Supreme Court precedent set in *Midlantic*,[2] the Trustee cannot abandon these assets as burdensome because it is his duty to comply with all environmental obligations required by State law. Assuming that New Mexico's position is correct, the Trustee would be unable to satisfy the requirements because the estates lack sufficient resources.

5.     As such, New Mexico asserts that if the bankruptcy estate fails to obtain the funds to meet its environmental obligations, New Mexico will soon be forced to plug the Debtors' wells on State and private land at an anticipated average cost to the State of $163,000 per well. In addition to plugging wells, the Debtors are allegedly also responsible for restoring and remediating well sites and production facilities. The cost for this restoration and remediation would range from a minimum of $50,000 per well to millions of dollars where contamination from tank batteries and production facilities exists.

6.     New Mexico asserts that if the Debtors do not find the funds to fulfill these environmental obligations, the State will be forced to restore and remediate these lands, which will likely lead to an administrative expense claim in the bankruptcy for any money expended in plugging and remediation of the Debtor's assets.

7.     The State has asserted police and regulatory causes of action against the Debtors for failing to plug wells, remediate the soil, and restore the land. Further, the State has asserted police and regulatory causes of action under the State's Fraud Against the Taxpayers Act against

---

[2] *Midlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494 (1986) (holding that a trustee cannot abandon environmentally contaminated property in contravention of state laws designed to protect human health, safety, or the environment).

related non-debtor entities. The State also has asserted causes of action under the Uniform Voidable Transactions Act ("UVTA") to recover the value of assets that were transferred out of the Debtors' well portfolio in exchange for inadequate consideration, as well as related causes of action for unjust enrichment, civil conspiracy, and corporate veil piercing. However, because of bankruptcy, these UVTA and related claims are also property of the bankruptcy estates.

8. As such, in December 2025, the State approached the Trustee with the State's draft complaint against the Debtors and non-debtor entities seeking the Trustee's position on these causes of action.

9. At that time, the Parties determined that, because the transfers identified by the State were made more than two years before this bankruptcy filing, the Trustee's statute of limitations to bring a fraudulent transfer claim under 11 U.S.C. § 548 had likely run.

10. Because the State is a creditor in this case, and, before the filing of this bankruptcy the State could have brought these claims under the UVTA, the Trustee may utilize 11 U.S.C. § 544(b)(1) to stand in the shoes of the State and bring these causes of action.

11. After due deliberations and discussions, the Trustee and the State started negotiations regarding the allocation of any recovery awarded for these UVTA claims, and the State agreed to not collect any recoveries from the Debtors outside of the bankruptcy court, but, instead, the State would come back to bankruptcy court in order to properly allocate funds and collect on any judgment awarded for the UVTA causes of action.

12. With this understanding in place and ongoing negotiations regarding allocation, and, in order to avoid the potentially applicable statute of limitations, the Trustee agreed to allow the State to file its complaint in state court, including the UVTA and related causes of action.

13. As such, on December 22, 2025, the State filed in this Court, its *Motion to*

*Determine Inapplicability of the Automatic Stay* (the "Motion to Determine"), which attached a copy of the draft complaint, and the next day, the State filed its complaint in New Mexico State Court[3] (the "State Court Case") and immediately put the case in abeyance so that this Court could consider the State's *Motion to Determine.*

14.     Because the State and Trustee were still in settlement discussions, on January 12, 2026, the Trustee filed a limited objection to the State's *Motion to Determine*, asserting that several causes of action in the State's draft complaint may constitute property of the bankruptcy estate and requested that any order granting the State's *Motion to Determine* clarify that the Court is not making a final determination as to the ownership of the specific causes of action.[4]

15.     On March 27, 2026, the Court held a hearing on the *Motion to Determine.* The Court directed that the Parties file a 9019 Motion and Agreement regarding the allocation of potential recoveries in the New Mexico State Court action and further directed the State to file a motion to lift the stay by April 13, 2026. The Court then reset the hearing on the State's *Motion to Determine* and the objections thereto till May 18, 2026.

16.     On April 13, 2026, the State filed its Lift Stay Motion.

17.     Also on April 13, 2026, the Trustee filed a motion to extend the deadline to file the 9019 Motion in order to allow the Trustee and the State to continue negotiating the allocation of potential recoveries in the New Mexico State Court action.

18.     On April 14, 2026, the Court entered an order granting the Trustee's motion to extend the deadline to file the 9019 Motion.

---

[3] The State's lawsuit is pending and held in abeyance in the First Judicial District Court, County of Santa Fe, New Mexico. *Raúl Torrez, Attorney General, et al. vs. Acacia Operating Company, LLC, et al.*; Case No. D-101-CV-2025-03283.

[4] Dkt. 62.

19.     On April 20, 2026, the Trustee filed a notice informing the Court that the Trustee and the State were continuing to discuss the allocation of potential recoveries in the New Mexico State Court action but had not yet reached an agreement.

20.     On May 11, 2026, the Parties reached a Settlement Agreement regarding the allocation of potential recoveries in the New Mexico State Court action. This 9019 Motion seeks approval of that Settlement Agreement.

21.     Further, the Trustee has reached a separate agreement with certain of the defendants named in the State Court Case for $1 million (the "New Era Settlement"). The 9019 seeking approval of the New Era Settlement is being filed contemporaneously herewith. Pursuant to this Settlement Agreement with New Mexico, the New Era Settlement would lead to a $650,000 recovery for the Acacia Resources estate (not Acacia Operating) and $350,000 to New Mexico.

### III.     SUMMARY OF THE SETTLEMENT AGREEMENT

22.     In the Settlement Agreement, the Trustee and the State have agreed to a share of recoveries on the UVTA/unjust enrichment claims and the claims secondary to those, ie. Counts II and III (UVTA), VI (unjust enrichment), VII (civil conspiracy to commit UVTA violations) and XI (veil piercing for Solis Partners, Pecos Slope Holdings, and Everett Willard Gray II):

a.  If the claims settle before discovery begins in the State Court litigation: 35% to the State; 65% to the bankruptcy estates;
b.  If the claims settle during/after discovery but before dispositive motion practice in the State Court litigation: 45% to the State; 55% to the bankruptcy estates;
c.  If the claims settle after a dispositive motion is granted but before trial in the State Court litigation: 50/50 split;
d.  If the claims go to trial or settle during or after trial in the State Court litigation: 60% to the State; 40% to the bankruptcy estates;
e.  If a final judgment of the State Court litigation case that includes the Bankruptcy Estate's causes of action is appealed: 70% to State; 30% to bankruptcy estates.

23.     The State agrees to waive the Trustee's liability for penalties and violations under the Oil and Gas Act during the pendency of the bankruptcy to the extent that the liability and violations exceed the Debtors' financial assurance with OCD for well plugging, and to the extent that liability and violations exceed any additional money, value, claims, notes, or claims that the State recovers for the Estates.

24.     The Trustee also agrees to withdraw the Sale Motion for the sale of assets to Jonathan Samaniego and American Energy Resources, and, upon the final distribution of all Recovery (as that term is used in the Settlement Agreement) funds, the Trustee shall move for dismissal of the Bankruptcy Cases rather than seeking to close the cases.

## IV.     ARGUMENT & AUTHORITIES TO APPROVE THE SETTLEMENT AS BEING FAIR AND EQUITABLE

25.     The Parties seek entry of an order approving the attached Settlement Agreement.

26.     The merits of a proposed compromise should be judged under the criteria set forth in *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

27.     The compromise must be "fair, equitable and in the best interest of the estate[,]" and a comparison of the settlement terms against the "likely rewards of litigation" must be made. *Id.*

28.     In determining whether a proposed compromise is fair and equitable, a Court should consider the following factors:

   a.     The probability of success in the litigation, with due consideration for the uncertainty in fact and law;

   b.     The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and;

   c.     All other factors bearing on the wisdom of the compromise. *Id.*

d.      In considering the third factor, the Fifth Circuit states that courts should consider 1. "the best interests of the creditors, 'with proper deference to their reasonable views'" and 2. "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Cadle Co. v. Mims* (*In re Moore*), 608 F.3d 253, 263 (5th Cir 2010).

29.      In deciding whether to accept a compromise, a trustee is required to reach an informed judgment, after diligent investigation, as to whether it is prudent to eliminate the inherent risks, delays, and expense of prolonged litigation. *Cook v. Waldron*, 2006 U.S. Dist. LEXIS 31411 (S.D. Tex., April 18, 2006); *In re Josiahs Trucking, LLC*, 2025 Bankr. LEXIS 1857 at *9 (Bankr. S.D. Tex., Aug. 4, 2025); *LeBlanc v. Salem* (*In re Mailman Steam Carpet Cleaning Corp.*), 212 F.3d 632 (1st Cir. 2000).

30.      Further, a court is not to substitute its own judgment for that of the trustee, but rather the court should "canvass the issues" and determine whether the settlement "falls below the lowest point in the range of reasonableness." *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 609 (2d Cir. 1983); *see also In re Idearc, Inc.*, 423 B.R. 138, 182 (Bankr. N.D. Tex. 2009).

31.      The Settlement Agreement should be approved under the factors set forth above.

32.      First, the thrust of the instant settlement is that the Trustee agrees to share with New Mexico certain recovery the estates may be entitled to in exchange for release from administrative expense liability. The Trustee believes that it would be difficult to succeed in an objection to any administrative expense claim New Mexico might assert on the basis of funds expended for plugging, remediation, or fines and penalties, which could result in significant liabilities to the estates and injury to its creditors.

33.      Second, any such litigation (such as challenging an asserted administrative expense claim) would likely cost tens of thousands of dollars and add no real value to the estates

and involve months of briefing, discovery, and presentation to the Court.

34.     Third, the practical reality is New Mexico investigated the claims, identified the causes of action, preserved those claims by filing the State Court complaint, and moved to hold the State Court action in abeyance pending bankruptcy approval. The State is in the best position to pursue these claims: New Mexico  will likely be the standard-bearer in any continued litigation in the State Court Case and will shoulder the burden of litigation, while the estates have limited resources. The proposed division of proceeds recognizes the estates' interest in New Mexico's diligent pursuit of these claims and simultaneously provides New Mexico an incentive to prosecute causes of action that would benefit the estates.

35.     Based on the foregoing, the Parties believe that the proposed compromise satisfies the requirements established by the Fifth Circuit in *In re Jackson Brewing*.[5]

**WHEREFORE,** the Parties respectfully request that this Court enter an order: 1) approving the proposed compromise set forth above; 2) finding that the Settlement Agreement satisfies Rule 9019 because it is fair, equitable, and in the best interests of the Estates; 3) finding that the Trustee has delegated to New Mexico, to the extent necessary, his authority to prosecute any Estate Claims that are not settled by the Trustee; and 4) granting such relief as is just and proper.

*(Remainder of Page Intentionally Left Blank – Signature Page Follows)*

---

[5] *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

DATED: May 22, 2026

Respectfully submitted,

**HAYWARD PLLC**

*/s/Charlie Shelton*
Charlie Shelton
Texas State Bar No. 24079317
7600 Burnet Road, Suite 530
Austin, TX 78757
Telephone: (737) 881-7100
Email: cshelton@haywardfirm.com,

***Counsel for the Chapter 7 Trustee***

-and-

*/s/ Abigail Rushing Ryan*
[E-Signed w/ Permission]
Abigail Rushing Ryan
State TX Bar No. 24035956
*Bankruptcy Counsel*
National Association of Attorneys General
1850 M Street NW, 12th Floor
Washington, DC 20036
aryan@naag.org

*/s/ Esther C. Jamison*
[E-Signed w/ Permission]
Raúl Torrez
*Attorney General*
William G. Grantham
Esther C. Jamison
*Assistant Attorneys General*
Environment Protection Division
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501
ejamison@nmdoj.gov

ATTORNEYS FOR THE STATE OF NEW MEXICO
AND THE OIL CONSERVATION DIVISION OF
THE NEW MEXICO ENERGY, MINERALS, AND
NATURAL RESOURCES DEPARTMENT

## CERTIFICATE OF SERVICE

I certify that on May 22, 2026, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Western District of Texas on the parties below via email.

| | |
|---|---|
| Ron Satija, Chapter 7 Trustee<br>PO Box 660208<br>Austin, TX 78766 | US Trustee<br>901 San Jacinto, Ste. 230<br>Austin, TX 78701 |
| BRANDON JOHN TITTLE<br>TITTLE LAW GROUP, PLLC<br>5550 GRANITE PKWY SUITE 220<br>PLANO, TX  75024 | Acacia Resources, LLC<br>P.O. Box 1110, Ste. 303<br>Boerne, TX 78006-1110 |
| Abigail Rushing Ryan<br>Bankruptcy Counsel<br>National Association of Attorneys General<br>1850 M Street NW, 12th Floor<br>Washington, DC 20036<br>aryan@naag.org<br><br>COUNSEL FOR THE STATE OF NEW MEXICO | Esther C. Jamison<br>Assistant Attorneys General<br>Environment Protection Division<br>New Mexico Department of Justice<br>408 Galisteo Street<br>Santa Fe, NM 87501<br>ejamison@nmdoj.gov |
| Jackson Walker LLP<br>Attn: Jennifer Wertz & Beau Butler<br>100 Congress, Suite 1100<br>Austin, Texas 78701<br>jwertz@jw.com<br>bbutler@jw.com<br><br>***Counsel for Marquis Reed Gilmore Jr, Gilmore Oil & Gas, LP, Bluebird Energy Corporation, and Cibolo Energy*** | |

*/s/ Charlie Shelton*
Charlie Shelton