**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| ACACIA RESOURCES, LLC | 24-70195 (SMR) |
| Debtor. | |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS TO CHAPTER 7 TRUSTEE'S (I) MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF ORDER APPROVING SETTLEMENT BETWEEN THE CHAPTER 7 TRUSTEE AND THE NEW ERA DEFENDANTS AND (II) AMENDED MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF ORDER APPROVING SETTLEMENT BETWEEN THE CHAPTER 7 TRUSTEE AND THE STATE OF NEW MEXICO AND THE OIL CONSERVATION DIVISION OF THE NEW MEXICO ENERGY, MINERALS AND NATURAL RESOURCES DEPARTMENT**

**[Related to Docket Nos. 134 and 135]**

Chevron U.S.A. Inc. and Chevron Midcontinent, L.P.; XTO Holdings, LLC; ConocoPhillips Company, Concho Oil & Gas LLC, COG Operating LLC, Marathon Oil Co., and Marathon Oil Permian LLC; OXY USA Inc., Anadarko E&P Onshore LLC, Anadarko Petroleum Corporation, Kerr-McGee Oil & Gas Onshore, Limited Partnership, OXY USA WTP Limited Partnership, Occidental Permian Limited Partnership, OXY Y-1 Company; Coterra Energy and Magnum Hunter Production Co.; and Legacy Reserves Operating LP (collectively, the "Non-Debtor Parties"), creditors in the above-captioned case, file this limited objection and reservation of rights (this "Limited Objection") to (I) *Motion Pursuant to Bankruptcy Rule 9019 for Entry of an Order Approving Settlement Agreement Between the Chapter 7 Trustee and the New Era Defendants* [Docket No. 134] (the "New Era Settlement Motion") and (II) *Amended Motion Pursuant to Bankruptcy Rule 9019 for Entry of an Order Approving Settlement Agreement Between the Chapter 7 Trustee and the State of New Mexico and the Oil Conservation Division of the New Mexico Energy, Minerals and Natural Resources Department* [Docket No. 135] (the "State

1

Settlement Motion", and together with the New Era Settlement Motion, the "Settlement Motions")[1] filed by the Chapter 7 trustee (the "Trustee") of the estate of the above-captioned debtor (the "Debtor"), and in support state as follows:

## SUMMARY OF LIMITED OBJECTION

1.      The Non-Debtor Parties file this Limited Objection to the Settlement Motions to protect and preserve their rights and interests, including (a) ensuring the orders approving the respective settlement agreements (the "Settlement Approval Orders") preserve the Non-Debtor Parties' right to assert administrative expense claims under Bankruptcy Code Section 503(b)(1)(A) for actual, necessary costs incurred in plugging wells, remediating contamination, and performing other environmental work with respect to the Debtor's leases and wells (the "Leases & Wells") that was the responsibility of the Debtor and the estate; (b) ensuring the Trustee does not seek dismissal of the Bankruptcy Cases until all timely-filed administrative expense claims of the Non-Debtor Parties and others have been adjudicated or otherwise resolved; (c) ensuring that any release granted in connection with the New Era Settlement does not release, bar, impair, or prejudice any claims, rights, or causes of action held by the Non-Debtor Parties or other third parties against Everett Willard Gray II, Solis Partners, LLC, Pecos Slope Holdings, LLC, New Era Energy & Digital, Inc., First Gray Corporation, and WS Oil and Gas, Ltd. (collectively, the "New Era Defendants") or their related parties; (d) preserving the Non-Debtor Parties' rights to pursue independent claims against the New Era Defendants and to obtain discovery from the State of New Mexico and the Oil Conservation Division of the New Mexico Energy, Minerals and Natural Resources Department (collectively, the "State of New Mexico") in connection with its continued prosecution of the State Court Case (defined below); and (e) ensuring that any funds

---

[1] Capitalized terms not defined in this Limited Objection have the meaning given to them in the Settlement Motions.

paid to the State of New Mexico under the settlement agreements are required to be applied directly to the plugging of wells, remediation of contamination, and restoration of land on the Leases & Wells—or to reimburse those parties, including the Non-Debtor Parties and others, who have performed or will perform such work.

2.      Accordingly, the Non-Debtor Parties do not, generally, object to the proposed settlements, provided the protective language proposed in this Limited Objection is included in the respective Settlement Approval Orders.

## BACKGROUND

### A.      The Bankruptcy Cases

3.      On December 27, 2024 ("Petition Date"), the Debtor commenced the above-captioned bankruptcy case (this "Bankruptcy Case") by filing a voluntary petition for relief under chapter 7 of title 11 of the United State Code (the "Bankruptcy Code").

4.      Also on December 27, 2024, Acacia Operating Company, LLC commenced Case No. 24-70194 (SMR) by filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code (together with this Bankruptcy Case, the "Bankruptcy Cases").

### B.      The Debtor's Operations

5.      Prior to the Petition Date, the Debtor was a private oil and gas operating company engaged in the acquisition, ownership, development, and/or production of oil and natural gas, and operation of oil and gas interests.

6.      The Debtor purchased its oil and gas interests out of the bankruptcy case filed by Remnant Oil Company, LLC ("Remnant Oil") in this Court's Midland Division, Case No. 19-70106, pursuant to the *Amended Order Granting Motion of Ronald Ingalls, Chapter 7 Trustee to Sell Real Property Free and Clear of Liens, Claims, Interests and Encumbrances (Oil and Gas*

*Interests)* entered June 30, 2020 [Docket No. 452] (the "Remnant Sale Order"). Remnant Oil acquired its interests from certain non-debtor parties, as discussed below.

7. The Debtor's operations were (and remain) subject to demands, orders, or obligations imposed by governmental regulatory authorities with jurisdiction over the Debtor's ownership and operation of oil and gas interests, including the New Mexico State Land Office (the "SLO"), the Bureau of Land Management ("BLM"), and the New Mexico Oil Conservation Division (the "OCD").

### C.     The Non-Debtor Parties

8. Certain non-debtor parties, including the Non-Debtor Parties, are lessees of record with the SLO and/or BLM on various leases containing wells owned and operated by the Debtor pre-petition, and where the Debtor is recognized by OCD as the "operator of record".

9. In some instances, the records with SLO, BLM, and/or OCD do not recognize the Debtor as the lessee or the owner and/or operator of record, even though it actively owned and operated the oil and gas interests it purchased from Remnant Oil pursuant to the Remnant Sale Order.

10. In yet other instances, the records of SLO, BLM and/or OCD may show that the Debtor is lessee of record where the Non-Debtor Parties own other interests, such as operating rights.

### D.     Regulatory Matters

11. The Debtor failed to perform numerous regulatory obligations imposed by SLO, BLM, and/or OCD before the Petition Date, and such obligations remain unperformed.

12. As a result, the regulatory agencies are looking to the Non-Debtor Parties to perform certain work associated with the Debtor's ownership and operation of its oil and gas interests including, for example, plugging and abandonment of wells, remediation of spills, leaks,

4

and discharges, removal of roads and power lines, removal of abandoned equipment, and other regulatory compliance activities, and the Non-Debtor Parties have incurred and continue to incur substantial costs in performing such work.

13. The estimated aggregate administrative expenses incurred by the Non-Debtor Parties for such work are not less than $20 million, and such costs continue to accrue as additional work is performed. This estimate is preliminary and is based upon information presently available to the Non-Debtor Parties, and shall not be construed as an admission by a Non-Debtor Party for any purpose. The Non-Debtor Parties expressly reserve the right to amend, supplement, or revise the estimated amount of their administrative expense claims at any time, and nothing herein shall be construed to limit or cap the Non-Debtor Parties' administrative expense claims to the amount stated above. All rights of the Non-Debtor Parties with respect to any amounts incurred or estimated to be incurred, and with respect to their rights, claims, defenses, regarding the obligations imposed on them by SLO, BLM, and/or OCD in this and any other forum or proceeding, are fully reserved and preserved.

### E. Stipulated Relief from Stay

14. The Trustee, together with respective Non-Debtor Parties, filed motions seeking approval of stipulations, under Bankruptcy Code Section 362(d), for purposes of granting the Non-Debtor Parties, *inter alia*, relief from the automatic stay (to the extent applicable), including but not limited to for the purpose of accessing and entering upon and across certain oil and gas leases and performing any and all acts as may be necessary or appropriate respecting demands, orders, or obligations imposed by governmental regulatory authorities with jurisdiction over the Debtor's ownership and operation of oil and gas interests (collectively, the "Stay Relief Motions"). Undersigned counsel and the Trustee continue to enter into additional stipulations and

file additional Stay Relief Motions as additional non-debtor parties work to respond to demands, orders, or obligations imposed by governmental regulatory authorities.

15. The Court entered its respective *Orders (I) Approving Stipulation and (II) Granting Relief from the Automatic Stay under 11 U.S.C. § 362(d)* at Docket Nos. 53, 54, 61, 63, 64, 87, 88, 89 (collectively, the "Stay Relief Orders"). The Trustee and undersigned counsel continue to cooperate with respect to further stipulations and requests for entry of stay relief orders (*e.g.,* Docket No. 100) so that other similarly situated non-debtor parties can prepare for and engage in work with respect to the Leases & Wells, consistent with Stay Relief Orders entered to date.

## THE STATE COURT CASE AND THE SETTLEMENT AGREEMENTS

16. On December 23, 2025, the State of New Mexico filed a complaint in the First Judicial District Court for the County of Santa Fe, New Mexico, Case Number D-101-CV-2025-03283 (the "State Court Case") asserting causes of action against the Debtors for failing to plug wells, remediate the soil, and restore the land. The State further asserts numerous causes of action against the New Era Defendants, including a claim under the Uniform Voidable Transactions Act to recover the value of assets that were transferred out of the Debtors' well portfolio in exchange for allegedly inadequate consideration.

17. On May 22, 2026, the Trustee filed the New Era Settlement Motion seeking approval of a settlement agreement with the New Era Defendants (the "New Era Settlement Agreement") pursuant to which the New Era Defendants will pay $1,000,000 within five days after court approval, of which $650,000 will be allocated to the Acacia Resources, LLC estate and $350,000 to the State of New Mexico. In exchange, the Trustee will dismiss the Trustee's claims against the New Era Defendants with prejudice and will provide a comprehensive release of the New Era Defendants and their related parties (the "Released Parties") from any and all claims

6

owned or controlled by both Acacia Operating Company, LLC's and Acacia Resources, LLC's bankruptcy estates arising out of or relating to the State Court Case.

18.     Also on May 22, 2026, the Trustee filed the State Settlement Motion seeking approval of a settlement agreement with the State of New Mexico (the "Trustee-State Settlement Agreement", and together with the New Era Settlement Agreement, the "Settlement Agreements") addressing, among other things, the allocation of potential recoveries on estate causes of action against the New Era Defendants, related questions regarding ownership of estate causes of action, and the State's objections to the Trustee's prior sale motion. Under the Trustee-State Settlement Agreement, the Trustee will seek a structured dismissal of the Bankruptcy Cases following distribution of funds recovered under the terms of the New Era Settlement Agreement. Additionally, the Trustee will withdraw the pending sale motion.

19.     The proposed settlements raise certain issues and concerns with respect to the Non-Debtor Parties' interests requiring clarification in the Settlement Agreement Orders, as discussed below.

## LIMITED OBJECTION

20.     The Non-Debtor Parties do not, generally, object to the proposed settlements; however, they file this Limited Objection to protect their rights and interests regarding the (a) use of settlement proceeds to pay to the Non-Debtor Parties' administrative expense claims, (b) impact of the proposed structured dismissal on the Non-Debtor Parties' ability to assert administrative expense claims, (c) breadth of the release granted to the New Era Defendants, (d) preservation of the Non-Debtor Parties' independent claims against the New Era Defendants and their rights to obtain discovery in the State Court Case, and (e) specific use of settlement funds received by the State of New Mexico.

### A. The Proposed Structured Dismissal Prejudices the Non-Debtor Parties.

21. The Trustee-State Settlement Agreement provides that upon final distribution of recovery funds, the Trustee shall move for dismissal rather than closure of the Bankruptcy Cases. While dismissal under Bankruptcy Code Section 349 generally revives creditors' rights, the structured nature of this dismissal—negotiated between only the Trustee and the State—may prejudice the Non-Debtor Parties by: (a) allowing the Trustee to distribute all available funds before the Non-Debtor Parties can assert administrative expense claims; (b) failing to provide for an orderly administrative claims process before dismissal;[2] and (c) effectively eliminating the only solvent source of recovery (the estate's settlement proceeds) from the estates before environmentally obligated parties can seek reimbursement.

22. Counsel to the Non-Debtor Parties and to the Trustee have discussed these issues and the Non-Debtor Parties understand that the Trustee contemplates an administrative claims process; however, the Settlement Approval Orders should account for and provide a mechanism for administrative expense claims to allow the Non-Debtor Parties, who have already expended funds to address environmental obligations that the Debtor failed to meet—thereby reducing the estate's environmental liability exposure—to seek reimbursement before the Bankruptcy Cases are dismissed.

### B. Third-Party Claims Should Be Preserved and Not Subject to the Release.

23. Section 1.3 of the New Era Settlement Agreement releases the New Era Defendants and all Released Parties from "any and all actions, causes of action, suits, claims, rights, damages, losses, liabilities, costs, expenses, attorneys' fees, contracts, agreements, obligations, or controversies of any nature whatsoever" arising out of or relating to the facts underlying the

---

[2] The Court established a bar date for filing pre-petition proofs of claim, but no date is set for filing applications for allowance of administrative expenses.

Trustee's claims. This release is extremely broad. The Settlement Approval Order for the New Era Settlement Agreement should make clear that any release under the settlement agreements does not affect the rights and claims of the Non-Debtor Parties or any other third party against the New Era Defendants or any other party related to the ownership and operation of the Debtor's interests, including without limitation claims for contribution, indemnification, reimbursement, unjust enrichment, or any other cause of action arising from or related to environmental obligations, well plugging, remediation, or restoration activities associated with the Debtor's Leases & Wells.

**B.**      ***Settlement Funds Received by the State of New Mexico Should be Applied to plugging, remediation, or restoration activities associated with the Leases & Wells***

24.      The Trustee-State Settlement Agreement lacks specificity regarding the State of New Mexico's use of the $350,000 it will receive from the settlement. The State Settlement Motion references the State of New Mexico's assertion that absent the estate's satisfaction of its environmental obligations, the State of New Mexico will be forced to plug the Debtor's wells estimated at $163,000 per well, along with restoration and remediation of $50,000 per well. (*See* Trustee-State Settlement Motion ¶ 4), but there is no directive that the State of New Mexico use the proceeds it receives for that purpose.

25.      The fact is, the State of New Mexico is imposing the plugging and remediation obligations related to the Leases and Wells on the Non-Debtor Parties. Accordingly, any funds paid to the State of New Mexico under the settlement agreements should be applied directly to the plugging of wells, remediation of contamination, and restoration of land on the Leases & Wells to relieve the Non-Debtor Parties from performing such work (to the extent of work that can be performed for $350,000)—or to reimburse those parties, including the Non-Debtor Parties, who have performed or will perform such work.

## REQUESTED LANGUAGE FOR INCLUSION IN SETTLEMENT APPROVAL ORDERS

26. To address the issues raised in this Limited Objection, the Non-Debtor Parties request insertion of the following language into the respective Settlement Approval Orders:

***Proposed Addition to the New Era Settlement Approval Order (Preservation of Third-Party Claims).***

"Nothing in the Settlement Agreement or this Order shall be construed to release, bar, impair, or prejudice any claims, rights, or causes of action held by any person or entity other than the Trustee, the Acacia Operating Company, LLC and Acacia Resources, LLC bankruptcy estates, or the State of New Mexico, against any of the New Era Defendants or their Related Parties, including without limitation claims for contribution, indemnification, reimbursement, unjust enrichment, or any other cause of action arising from or related to environmental obligations, well plugging, remediation, or restoration activities associated with the Debtors' wells, leases, or related facilities."

***Proposed Addition to the New Era Settlement Approval Order (Statement Regarding Scope of Release).***

"The Court finds and determines that the release set forth in Section 1.3 of the Settlement Agreement extends only to claims owned, held, or controlled by the Trustee or the bankruptcy estates of Acacia Operating Company, LLC and Acacia Resources, LLC, and does not release, bar, or impair any claims held by any other person or entity, including without limitation any claims for contribution, indemnification, or reimbursement held by parties who have incurred costs in plugging wells, remediating contamination, or performing other environmental work on or relating to the Debtors' wells, leases, or facilities."

***Proposed Addition to the Trustee-State Settlement Approval Order (Recognition of Third-Party Administrative Expense Claims).***

"Nothing in the Settlement Agreement or this Order shall preclude any party in interest from asserting an administrative expense claim under Bankruptcy Code Section 503(b)(1)(A) for actual, necessary costs incurred in preserving estate property, including expenditures for plugging wells, remediating contamination, or restoring land associated with the Debtors' oil and gas operations. The Trustee shall not seek dismissal of these Bankruptcy Cases until any timely-

10

filed administrative expense claims have been adjudicated or otherwise resolved by agreement of the parties."

***Proposed Modification to Trustee-State Settlement Agreement, Section 7 (Dismissal) (Orderly Claims Resolution Before Dismissal).***

"Prior to moving for dismissal of the Bankruptcy Cases, the Trustee shall provide not less than thirty (30) days' written notice to all known creditors and parties in interest, including any party that has filed a proof of claim or asserted an administrative expense claim, of the Trustee's intent to seek dismissal. The Trustee shall not move for dismissal until all timely-filed administrative expense claims under Bankruptcy Code Section 503(b) have been resolved by agreement or adjudication by the Bankruptcy Court."

***Proposed Addition to Both Settlement Approval Orders (Non-Preclusion of Discovery Rights).***

"Nothing in the Settlement Agreements or these Orders shall preclude any party in interest or any non-party from: (i) seeking to intervene in the State Action (Case No. D-101-CV-2025-03283); (ii) issuing subpoenas to the State of New Mexico, the Oil Conservation Division, or any other party for documents or testimony relating to the environmental conditions of the Debtors' wells, leases, and facilities; or (iii) obtaining through the Inspection of Public Records Act or other lawful means any documents or information in the possession of the State relating to the investigation, enforcement, or prosecution of claims against the Debtors or the New Era Defendants."

***Proposed Addition to the Trustee-State Settlement Approval Order (Allocation of Recovery to Account for Third-Party Expenditures).***

"To the extent that any party in interest demonstrates, by motion or claim filed before dismissal, that it has incurred actual costs in plugging wells or performing remediation or restoration work that directly reduced or eliminated environmental liabilities of the Debtors' estates, the Trustee shall consider such costs in the distribution of Recovery funds consistent with applicable provisions of the Bankruptcy Code, including Bankruptcy Code Section 503(b)(1)(A), before moving for dismissal of the Bankruptcy Cases."

11

***Proposed Addition to the Trustee-State Settlement Approval Order (Directed Application of Settlement Funds for Plugging and Environmental Remediation).***

"Any funds received by the State of New Mexico under the Settlement Agreement or the New Era Settlement Agreement that are allocated or attributable to the plugging of wells, remediation of contamination, or restoration of land on the Debtors' Leases & Wells shall be held and applied by the State exclusively for such purposes. The State shall apply such funds directly to: (i) plugging wells on the Debtors' Leases & Wells that the Debtor failed to plug prior to the Petition Date; (ii) remediating contamination and restoring land on or associated with the Debtors' Leases & Wells; and/or (iii) reimbursing parties, including the Non-Debtor Parties, who have incurred or will incur actual costs in performing plugging, remediation, or restoration work on the Debtors' Leases & Wells that was the obligation of the Debtor. The State shall provide an accounting of the use of such funds to any party in interest upon request."

***Proposed Addition to Both Settlement Approval Orders (No Preclusive Effect of No-Admission Clauses on Third-Party Litigation).***

"The Court acknowledges that Section 2.3 of the New Era Settlement Agreement and Section 10 of the Trustee-State Settlement Agreement are binding only upon the parties to those respective agreements. Nothing in those provisions or in these Orders shall be construed to prohibit any non-party from independently establishing, through admissible evidence in a separate proceeding, facts relating to the conduct of the New Era Defendants, Everett Willard Gray II, or any other party with respect to the Debtors' assets, wells, leases, or environmental obligations."

## RESERVATION OF RIGHTS

27. The Non-Debtor Parties reserve and preserve all rights with respect to the proposed settlements and any proposed dismissal of the Bankruptcy Cases. Nothing in this Limited Objection constitutes a waiver by any of the Non-Debtor Parties of any and all of their rights, remedies, defenses, claims, interests, or privileges under the Bankruptcy Code and Rules, applicable non-bankruptcy law, any contractual rights, or any of the Non-Debtor Parties'

12

procedural, substantive, equitable, or other rights, remedies, claims, defenses, interests, or privileges in connection with the Leases and Wells and related issues, all of which are hereby expressly reserved and preserved. The Non-Debtor Parties reserve the right to amend, modify, or supplement this Limited Objection at any time, including at any hearing(s) on the Settlement Motion or other matters related to the proposed settlements.

## **CONCLUSION**

WHEREFORE PREMISES CONSIDERED, the Non-Debtor Parties respectfully request that (i) any orders granting the Settlement Motions and approving the Settlement Agreements reserve and preserve the Non-Debtor Parties' rights as described above, and include the protective and procedural language proposed in this Limited Objection; and (ii) the Court grant the Non-Debtor Parties such other relief as the Court deems just and proper.

DATED: June 12, 2026

Respectfully submitted,

**HOLLAND & HART LLP**

/s/ Matthew J. Ochs
Matthew J. Ochs (admitted *pro hac vice*)
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Telephone: (303) 295-8299
Email: mjochs@hollandhart.com

**HOLLAND & HART LLP**

/s/ Robert Sutphin, Jr.
Robert Sutphin, Jr. (admitted *pro hac vice*)
110 North Guadalupe Street, Suite 1
Santa Fe, NM 87501
Telephone: (505) 954-7289
Email: rsutphin@hollandhart.com

*Attorneys for Chevron U.S.A. Inc. and Chevron Midcontinent, L.P.; XTO Holdings, LLC; ConocoPhillips Company, Concho Oil & Gas LLC, COG Operating LLC,*

*Marathon Oil Co., and Marathon Oil Permian LLC; OXY USA Inc., Anadarko E&P Onshore LLC, Anadarko Petroleum Corporation, Kerr-McGee Oil & Gas Onshore, Limited Partnership, OXY USA WTP Limited Partnership, Occidental Permian Limited Partnership, OXY Y-1 Company; Coterra Energy and Magnum Hunter Production Co.; and Legacy Reserves Operating LP*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on June 12, 2026, a true and correct copy of the foregoing was served via CM/ECF to all parties requesting service thereby.

/s/ Matthew J. Ochs
Matthew J. Ochs

38135187.v6